IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERCOM, INC.,<br><br>    *Plaintiff*,<br><br>v.<br><br>DISINTERMEDIATION SERVICES, INC.,<br><br>    *Defendant*. | Case No.: 1:25-cv-00619-UNA<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT**

Plaintiff Intercom, Inc. ("Intercom") hereby files this Complaint for declaratory judgment of non-infringement regarding four patents previously asserted by Disintermediation Services, Inc. ("DSI") against Intercom's customer, Living Spaces Furniture, LLC ("Living Spaces"), in a case filed in the U.S. District Court for the Eastern District of Texas, styled *Disintermediation Services, Inc. v. Living Spaces Furniture, LLC*, No. 2:24-cv-01045-JRG-RSP (the "Texas Case").

**THE PARTIES**

1. Intercom is a corporation duly organized under the laws of the State of Delaware with its principal place of business at 55 2nd Street, 4th Floor, San Francisco, California, 94105.

2. On information and belief, DSI had been a corporation duly organized under the laws of the State of Delaware since its date of formation on September 26, 2011 until August 27, 2024, and while DSI was a Delaware corporation, it had accused Intercom's customer, Living Spaces, of infringing the four patents now asserted in the Texas case through Living Spaces' use of Intercom's chatbot technology and had made a demand that Living Spaces either cease its allegedly infringing activity and pay a royalty for alleged past infringement or pay for a license to the patents.

1

3. On information and belief, while DSI was a Delaware corporation, its principal place of business was 6778 Rattle Run Rd., St. Clair, MI 48079. *See*, *e.g.*, *Disintermediation Servs., Inc. v. Glia Techs., Inc.*, No. 1:23-cv-00086 (D. Del. Jan. 24, 2023), Dkt. 1, at ¶ 2.

4. On information and belief, DSI is, as of August 27, 2024, a corporation duly organized under the laws of the State of Texas with its principal place of business located at 3300 Dallas Parkway, Suite 200, Plano, Texas, 75093.

5. On information and belief, DSI is and continues to be registered to do business in the State of Delaware, and DSI's registered agent for service of process in the State of Delaware is Business Filings Incorporated, located at 108 West 13th Street, Wilmington, Delaware 19801.

6. On information and belief, Living Spaces is a Delaware limited liability company with its principal place of business located at 14501 Artesia Blvd., La Mirada, California 90638.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over these claims under 28 U.S.C. §§ 1331, 1338, 2201, and 2202. This case arises under the patent laws of the United States as enacted under Title 35 of U.S. Code and the provisions of the Federal Declaratory Judgment Act.

8. This Court has personal jurisdiction over DSI because DSI has directed efforts to enforce its patents at residents of this State, has availed itself of the benefits of enforcing its patents in this Court, and has maintained systematic and continuous contacts with this forum.

   a) While it was a Delaware corporation, DSI has previously filed four lawsuits in this District alleging infringement of the two of the four patents at issue in this lawsuit (i.e., the '597 and '787 Patents), each against a Delaware resident: *Disintermediation Servs., Inc. v. Glia Techs., Inc.*, No. 1:23-cv-00086 (D. Del. Jan. 24, 2023); *Disintermediation Servs., Inc. v. LiveChat, Inc.*, No. 1:22-cv-01565 (D. Del. Dec. 2, 2022); *Disintermediation Servs., Inc. v. MobileMonkey Inc.*, No. 1:22-

cv-01490 (D. Del. Nov. 14, 2022); and *Disintermediation Servs., Inc. v. Alive Techs, Inc.*, No. 1:22-cv-01128 (D. Del. Aug. 29, 2022).

b) At the time it was still a Delaware corporation, DSI sent an enforcement letter ("Demand Letter"), attached as <u>Exhibit 1</u>, to Living Spaces (a Delaware resident) dated April 5, 2024, on or about May 9, 2024, alleging that Living Spaces infringed four patents, U.S. Patents Nos. 11,240,183 ("the '183 Patent"), 11,336,597 ("the '597 Patent"), 11,349,787 ("the '787 Patent"), and 11,855,937 ("the '937 Patent") (collectively "the Patents-in-Suit"), through use of Living Spaces' chatbot provided by Intercom and demanding that Living Spaces either cease it allegedly infringing activities and pay a royalty for its alleged past use of the claimed technology or pay for a license to the claimed technology. On information and belief, DSI was at that time incorporated under the laws of the State of Delaware.

c) On August 9, 2024, Intercom sent a responsive letter ("Intercom's Response Letter") to DSI's Demand Letter, while DSI was still a Delaware corporation, informing DSI that Living Spaces used Intercom's chatbot technology and that Intercom's chatbot technology did not infringe the Patents-in-Suit.

d) DSI did not respond to Intercom's Response Letter and proceeded to file a complaint initiating the Texas Case on December 13, 2024 ("Texas Complaint," attached as <u>Exhibit 2</u>), alleging that Intercom's customer, Living Spaces, a Delaware resident, infringes the Patents-in-Suit based on Living Spaces' use of chatbot technology, which it licenses from Intercom, a Delaware resident. In the Texas Complaint, DSI failed to acknowledge Intercom's Response Letter and

incorrectly alleged that Living Spaces never responded to the Demand Letter. After being informed of this incorrect allegation, DSI filed an Amended Texas Complaint that removed its allegations that Living Spaces had never responded to the Demand Letter. Exhibit 8, Amended Texas Complaint.

e) For over four months, since the filing of the Texas case on December 13, 2024 up to present, DSI has engaged in extensive settlement discussions with Intercom and Living Spaces (both Delaware residents) on a nearly weekly basis seeking to settle its dispute with both Living Spaces and Intercom regarding Intercom's chatbot technology and the Patents-in-Suit.

f) DSI has directed judicial enforcement efforts against a Delaware resident, Living Spaces, by filing the Texas Complaint (Exhibit 2) a claim chart exhibit attached thereto (exhibit 15 to the Texas Complaint) (attached as Exhibit 3), and an amended complaint (Exhibit 8) ("Amended Texas Complaint") in the Texas Case alleging that Living Spaces is infringing the Patents-in-Suit via its use of chatbot technology, which, as discussed, is licensed to it by a Delaware resident, Intercom.

g) On information and belief, DSI had long been incorporated in Delaware since its formation on September 26, 2011 and was still a resident of Delaware through being incorporated in Delaware as of the time that the controversy regarding the Patents-in-Suit arose between DSI and Living Spaces and Intercom.

h) After DSI sent its Demand Letter and after Intercom sent Intercom's Response Letter, DSI changed its state of incorporation from the State of Delaware to the State of Texas on August 27, 2024, just over three months before filing the Texas Case.

   i)  On information and belief, DSI changed its state of incorporation from the State of Delaware to the State of Texas in an attempt (albeit unsuccessful) to avoid Delaware from having personal jurisdiction over DSI regarding this dispute and to attempt to create a connection to Texas.

   j)  On information and belief, DSI is and continues to be registered to do business in the State of Delaware.

  9. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b) at least because Defendant is subject to personal jurisdiction in this judicial district, has directed its business, licensing, and enforcement activities at this judicial district, and has recently been a long-time resident of this judicial district through its long-time incorporation in this judicial district.

## EXISTENCE OF AN ACTUAL CONTROVERSY

  10. There is an actual controversy within the jurisdiction of this Court under 28 U.S.C. §§ 2201 and 2202.

  11. DSI has directed correspondence to Living Spaces alleging infringement of the Patents-in-Suit and demanding that Living Spaces either cease its alleged infringement and pay a royalty for alleged past infringement or pay a royalty to license the Patents-in-Suit. Exhibit 1, Demand Letter.

  12. DSI filed the Texas Case alleging that Living Spaces is infringing the Patents-in-Suit via use of the chatbot technology on the www.livingspaces.com website. Exhibit 2, Texas Complaint, at ¶¶ 3, 52, 54-59. DSI has also filed the Amended Texas Complaint repeating those infringement allegations. Exhibit 8, Amended Texas Complaint. Absent a declaration of non-infringement, DSI will continue to wrongfully allege that Living Spaces' website infringes the Patents-in-Suit, and thereby causes Living Spaces and Intercom irreparable injury and damage.

5

13. Intercom is the developer of break-through, human-quality chatbot technology, including such technology that incorporates artificial intelligence (AI). Intercom provides a complete AI-first customer service platform to customers. Intercom's customers employ this chatbot technology on their websites to streamline frontline customer support.

14. Intercom provides various customer service solutions to Living Spaces, including chatbot technology. Intercom has provided and continues to provide the chatbot technology to Living Spaces that Living Spaces uses on the www.livingspaces.com website.

15. Intercom servers and software, not Living Spaces servers or software, are used to provide the chatbot technology that Living Spaces uses on the www.livingspaces.com website.

16. DSI, therefore, has alleged in its Demand Letter and in the Texas Case that Intercom's chatbot technology infringes the Patents-in-Suit.

17. Absent a declaration of non-infringement, DSI will continue to wrongfully allege that Living Spaces' use of Intercom's chatbot technology infringes the Patents-in-Suit, and thereby cause Intercom irreparable injury and damage.

18. Living Spaces is a mere customer of Intercom with regard to the Intercom chatbot technology that Living Spaces uses on the www.livingspaces.com website.

19. Living Spaces does not use the chatbot technology of any provider other than Intercom on the www.livingspaces.com website.

20. Intercom has agreed to indemnify Living Spaces for DSI's claims of infringement of the Patents-in-Suit against Living Spaces based on Living Spaces' use of Intercom's chatbot technology for the chatbot on the www.livingspaces.com website.

21. If Intercom's chatbot technology is found to not infringe the Patents-in-Suit in the declaratory relief requested by Intercom in this Complaint, then that determination will be binding

on DSI and determinative of DSI's allegations of infringement of the Patents-in-Suit against Living Spaces in the Texas Case.

22. Living Spaces has consented to be bound by the outcome of this instant action.

23. There is no basis for personal jurisdiction or venue over Intercom in the Eastern District of Texas.

24. Based on DSI's filing of the Texas Case, the Demand Letter sent by DSI, and the ongoing settlement discussions DSI has been having with Intercom and Living Spaces, an actual controversy has arisen and now exists as to whether Plaintiff has infringed or is infringing the Patents-in-Suit, including, but not limited to, by Intercom providing the Intercom chatbot technology to Living Spaces that Living Spaces uses on the www.livingspaces.com website and that DSI has alleged has infringed and is infringing the Patents-in-Suit.

25. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., there exists a substantial and actual controversy of sufficient immediacy and reality between Plaintiff and DSI to warrant issuance of a declaratory judgment, and Plaintiffs requests the declaration of the Court that Plaintiffs do not infringe and have not infringed any claim of the Patents-in-Suit.

**COUNT I: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '183 PATENT**

26. Plaintiff incorporates by reference each of the allegations in the foregoing paragraphs as though fully set forth herein and further alleges as follows:

27. As a result of the acts described in the preceding paragraphs, there exists an actual controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment of non-infringement.

28. A judicial declaration is necessary and appropriate so that Plaintiff may ascertain its rights regarding its products with respect to the '183 Patent.

29.     The '183 Patent, entitled "Two-Way Real Time Communication System that Allows Asymmetric Participation in Conversations Across Multiple Electronic Platforms," names John Patrick Francis Dandison, James Allen Johnson, and Paul Joseph Lyman Schottland as inventors and bears an issue date of February 1, 2022. Attached as Exhibit 4 is a true and correct copy of the '183 Patent. On information and belief, DSI is the owner of all right, title, and interest in the '183 Patent.

30.     In the Texas Complaint and Amended Texas Complaint, DSI alleges that the chatbot technology used on Living Spaces' website www.livingspaces.com infringes claims 1, 3, 5, 9, 12-14, and 16-18 of the '183 Patent. Exhibit 2, Texas Complaint, at ¶ 55; Exhibit 3, Claim Chart (Exhibit 15 to Texas Complaint); Exhibit 8, Amended Texas Complaint, at ¶ 54.

31.     Claim 1 of the '183 Patent recites a system for web-based communication, the system comprising an electronic processor configured to, among other things: 1) receive a request from an unauthenticated user of a web browser for a web page; 2) send to the web browser from a first responder a question for the unauthenticated user; 3) receive a first communication as part of a conversation from the unauthenticated user of the web browser, wherein the first communication comprises an answer to the question; 4) send the first communication to the first responder; and 5) determine a conversation identifier for the conversation based on the first communication.

32.     By way of example and not limitation, Intercom's chatbot technology does not infringe claim 1 of the '183 Patent at least because, to the extent it "determine[s] a conversation identifier" that is "based on" the claimed "first communication," it does not do so *after*: 1) receiving a request from an unauthenticated user of a web browser for a web page; 2) sending to the web browser from a first responder a question for the unauthenticated user; 3) receiving a first communication as part of a conversation from the unauthenticated user of the web browser,

wherein the first communication comprises an answer to the question; and 4) sending the first communication to the first responder.

33. Additionally, claim 1 of the '183 Patent also recites a system for web-based communication, the system comprising an electronic processor configured to, among other things, send to the web browser a question for the unauthenticated user from *a first responder* based on the request for the web page.

34. By way of example and not limitation, Intercom's chatbot technology also does not infringe claim 1 of the '183 Patent at least because the '183 Patent uses the term "first responder" to mean a human person, rather than a "virtual assistant," "AI Helper Bot," or "automated computer/AI system" as DSI alleges for its infringement theory for this term in Intercom's system. *See* Exhibit 1, Demand Letter, at 78; Exhibit 3, Claim Chart, at 6-7; Exhibit 4, '183 Patent, at 6:21-37, 11:19-22.

35. Claims 3, 5, 9, 12-14, and 16-18 of the '183 Patent are not infringed for at least the same reasons because they depend from claim 1 and incorporate the limitations of claim 1.

36. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., there exists a substantial and actual controversy of sufficient immediacy and reality between Plaintiff and DSI to warrant issuance of a declaratory judgment, and Plaintiff requests the declaration of the Court that Plaintiff does not infringe and has not infringed any claim of the '183 Patent.

37. Plaintiff is entitled to a declaratory judgment that Plaintiff has not infringed and does not infringe, either directly or indirectly, any claim of the '183 Patent under 35 U.S.C. § 271.

## COUNT II: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '597 PATENT

38. Plaintiff incorporates by reference each of the allegations in the foregoing paragraphs as though fully set forth herein and further alleges as follows:

39. As a result of the acts described in the preceding paragraphs, there exists an actual controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment of non-infringement.

40. A judicial declaration is necessary and appropriate so that Plaintiff may ascertain its rights regarding its products with respect to the '597 Patent.

41. The '597 Patent, entitled "Two-Way Real Time Communication System that Allows Asymmetric Participation in Conversations Across Multiple Electronic Platforms," names John Patrick Francis Dandison, James Allen Johnson, and Paul Joseph Lyman Schottland as inventors and bears an issue date of May 17, 2022. Attached as Exhibit 5 is a true and correct copy of the '597 Patent. On information and belief, DSI is the owner of all right, title, and interest in the '597 Patent.

42. In the Texas Complaint and Amended Texas Complaint, DSI alleges that the chatbot technology used on Living Spaces' website www.livingspaces.com infringes claims 1, 3-5, 8-10, 12, and 15-16 of the '597 Patent. Exhibit 2, Texas Complaint, at ¶ 55; Exhibit 3, Claim Chart (Exhibit 15 to Texas Complaint); Exhibit 8, Amended Texas Complaint, at ¶ 54.

43. Claim 1 of the '597 Patent recites a system for web-based communication, the system comprising an electronic processor configured to, among other things: 1) receive a communication request from a web browser of an unauthenticated user of a web page, initiated from the web page; 2) send to the web browser from a first responder a request for information for the unauthenticated user as part of a conversation, wherein the request for information is sent based on the communication request; 3) receive a first communication as part of the conversation from the unauthenticated user of the web browser; and 4) determine a conversation identifier for the conversation based on the first communication..

44. By way of example and not limitation, Intercom's chatbot technology does not infringe claim 1 of the '597 Patent at least because, to the extent it "determine[s] a conversation identifier" that is "based on" the claimed "first communication," it does not do so *after*: 1) receiving a communication request from a web browser of an unauthenticated user of a web page, initiated from the web page; 2) sending to the web browser from a first responder a request for information for the unauthenticated user as part of a conversation, wherein the request for information is sent based on the communication request; and 3) receiving a first communication as part of the conversation from the unauthenticated user of the web browser.

45. Additionally, claim 1 of the '597 Patent also recites a system for web-based communication, the system comprising an electronic processor configured to, among other things, send to the web browser from *a first responder* a request for information for the unauthenticated user of the web browser as part of a conversation.

46. By way of example and not limitation, Intercom's chatbot technology also does not infringe claim 1 of the '597 Patent at least because the '597 Patent uses the term "first responder" to mean a human person, rather than a "virtual assistant," "AI Helper Bot," or "automated computer/AI system" as DSI alleges for its infringement theory for this term in Intercom's system. *See* Exhibit 1, Demand Letter, at 57; Exhibit 3, Claim Chart, at 43-44; Exhibit 5, '597 Patent at 6:24-40, 11:27-30.

47. Claims 3-5, 8-10, 12, and 15-16 of the '597 Patent are not infringed for at least the same reasons because they depend from claim 1 and incorporate the limitations of claim 1.

48. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., there exists a substantial and actual controversy of sufficient immediacy and reality between Plaintiff

and DSI to warrant issuance of a declaratory judgment, and Plaintiff requests the declaration of the Court that Plaintiff does not infringe and has not infringed any claim of the '597 Patent.

49.  Plaintiff is entitled to a declaratory judgment that Plaintiff has not infringed and does not infringe, either directly or indirectly, any claim of the '597 Patent under 35 U.S.C. § 271.

### COUNT III: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '787 PATENT

50.  Plaintiff incorporates by reference each of the allegations in the foregoing paragraphs as though fully set forth herein and further alleges as follows:

51.  As a result of the acts described in the preceding paragraphs, there exists an actual controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment of non-infringement.

52.  A judicial declaration is necessary and appropriate so that Plaintiff may ascertain its rights regarding its products with respect to the '787 Patent.

53.  The '787 Patent, entitled "Two-Way Real Time Communication System that Allows Asymmetric Participation in Conversations Across Multiple Electronic Platforms," names John Patrick Francis Dandison, James Allen Johnson, and Paul Joseph Lyman Schottland as inventors and bears an issue date of May 31, 2022. Attached as Exhibit 6 is a true and correct copy of the '787 Patent. On information and belief, DSI is the owner of all right, title, and interest in the '787 Patent.

54.  In the Texas Complaint and Amended Texas Complaint, DSI alleges that the chatbot technology used on Living Spaces' website www.livingspaces.com infringes claims 1-3, 8, 12, and 16 of the '787 Patent. Exhibit 2, Texas Complaint, at ¶ 55; Exhibit 3, Claim Chart (Exhibit 15 to Texas Complaint); Exhibit 8, Amended Texas Complaint, at ¶ 54.

55. Claim 1 recites a system for web-based communication, the system comprising an electronic processor configured to, among other things: 1) receive a communication request, from a web browser of an unauthenticated user of a web page, based on a request from the web browser for the web page; 2) send to the web browser from a first responder a request for information for the unauthenticated user of the web browser as part of a conversation, wherein the request for information is sent based on the communication request; 3) receive a first communication as part of the conversation from the user, wherein the first communication comprises a response to the request for information; and 4) determine a conversation identifier for the conversation based on the first communication.

56. By way of example and not limitation, Intercom's chatbot technology does not infringe claim 1 of the '787 Patent at least because, to the extent it "determine[s] a conversation identifier" that is "based on" the claimed "first communication," it does not do so *after*: 1) receiving a communication request, from a web browser of an unauthenticated user of a web page, based on a request from the web browser for the web page; 2) sending to the web browser from a first responder a request for information for the unauthenticated user of the web browser as part of a conversation, wherein the request for information is sent based on the communication request; and 3) receiving a first communication as part of the conversation from the user, wherein the first communication comprises a response to the request for information..

57. Additionally, claim 1 also recites a system for web-based communication, the system comprising an electronic processor configured to send to the web browser from *a first responder* a request for information for the unauthenticated user of the web browser as part of a conversation.

58. By way of example and not limitation, Intercom's chatbot technology also does not infringe claim 1 of the '787 Patent at least because the specification of the '787 Patent uses the term "first responder" to mean a human person, rather than a "virtual assistant," "AI Helper Bot," or "automated computer/AI system" as DSI alleges for its infringement theory for this term in Intercom's system. *See* Exhibit 1, at 35; Exhibit 3, Claim Chart, at 78; Exhibit 6, '787 Patent at 6:24-40, 11:27-30.

59. Claims 2-3, 8, 12, and 16 of the '787 Patent are not infringed for at least the same reasons because they depend from claim 1 and incorporate the limitations of claim 1.

60. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., there exists a substantial and actual controversy of sufficient immediacy and reality between Plaintiff and DSI to warrant issuance of a declaratory judgment, and Plaintiff requests the declaration of the Court that Plaintiff does not infringe and has not infringed any claim of the '787 Patent.

61. Plaintiff is entitled to a declaratory judgment that Plaintiff has not infringed and does not infringe, either directly or indirectly, any claim of the '787 Patent under 35 U.S.C. § 271.

**COUNT IV: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '937 PATENT**

62. Plaintiff incorporates by reference each of the allegations in the foregoing paragraphs as though fully set forth herein and further alleges as follows:

63. As a result of the acts described in the preceding paragraphs, there exists an actual controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment of non-infringement.

64. A judicial declaration is necessary and appropriate so that Plaintiff may ascertain its rights regarding its products with respect to the '937 Patent.

65. The '937 Patent, entitled "Two-Way Real Time Communication System that Allows Asymmetric Participation in Conversations Across Multiple Electronic Platforms," names John Patrick Francis Dandison, James Allen Johnson, and Paul Joseph Lyman Schottland as inventors and bears an issue date of December 26, 2023. Attached as Exhibit 7 is a true and correct copy of the '937 Patent. On information and belief, DSI is the owner of all right, title, and interest in the '937 Patent.

66. In the Texas Complaint and Amended Texas Complaint, DSI alleges that the chatbot technology used on Living Spaces' website www.livingspaces.com infringes claims 1-6, 8, 11, 13, and 16-17 of the '937 Patent. Exhibit 2, Texas Complaint, at ¶ 55; Exhibit 3, Claim Chart (Exhibit 15 to Texas Complaint); Exhibit 8, Amended Texas Complaint, at ¶ 54.

67. Claim 1 of the '937 Patent recites a system for web-based communication, the system comprising an electronic processor configured to, among other things: 1) receive a communication request, from a web browser of an unauthenticated user of a web page; 2) send to the web browser from a first responder a request for information for the unauthenticated user of the web browser as part of a conversation, wherein the request for information is sent in response to the communication request; 3) receive a first communication as part of the conversation from the web browser, wherein the first communication comprises a response to the request for information; and 4) determine a conversation identifier for the conversation based on receiving the first communication..

68. By way of example and not limitation, Intercom's chatbot technology does not infringe claim 1 of the '937 Patent at least because, to the extent it "determine[s] a conversation identifier" that is "based on" the claimed "first communication," it does not do so *after*: 1) receiving a communication request, from a web browser of an unauthenticated user of a web page;

2) sending to the web browser from a first responder a request for information for the unauthenticated user of the web browser as part of a conversation, wherein the request for information is sent in response to the communication request; and 3) receiving a first communication as part of the conversation from the web browser, wherein the first communication comprises a response to the request for information.

69. Additionally, claim 1 of the '937 Patent also recites a system for web-based communication, the system comprising an electronic processor configured to send to the web browser from *a first responder* a request for information for the unauthenticated user of the web browser as part of a conversation.

70. By way of example and not limitation, Intercom's chatbot technology also does not infringe claim 1 of the '937 Patent at least because the '937 Patent uses the term "first responder" to mean a human person, rather than a "virtual assistant," "AI Helper Bot," or "automated computer/AI system" as DSI alleges for its infringement theory for this term in Intercom's system. *See* Exhibit 1, at 8; Exhibit 3, Claim Chart, at 105; Exhibit 7, '937 Patent at 6:29-45, 11:27-30.

71. Claims 2-6, 8, 11, 13, and 16-17 of the '937 Patent are not infringed for at least the same reasons because they depend from claim 1 and incorporate the limitations of claim 1.

72. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., there exists a substantial and actual controversy of sufficient immediacy and reality between Plaintiff and DSI to warrant issuance of a declaratory judgment, and Plaintiff requests the declaration of the Court that Plaintiff does not infringe and has not infringed any claim of the '937 Patent.

73. Plaintiff is entitled to a declaratory judgment that Plaintiff has not infringed and does not infringe, either directly or indirectly, any claim of the '937 Patent under 35 U.S.C. § 271.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests entry of a judgment in its favor and against DSI as follows:

a) Declaring that Intercom and its chatbot technology do not infringe and have not infringed, either directly or indirectly, any claim of the Patents-in-Suit;

b) Adjudging that DSI and each of its officers, directors, agents, counsel, servants, employees, and all of persons in active concert or participation with any of them, be restrained and enjoined from alleging, representing, or otherwise stating that Intercom or its chatbot technology, or any customer, manufacturer, user, importer, or seller of Intercom's chatbot technology, including but not limited to Living Spaces, infringe any claims of the Patents-in-Suit or from instituting or initiating any action or proceeding alleging any such infringement;

c) Declaring Plaintiff as the prevailing party, declaring this case exceptional, and awarding Plaintiff its reasonable attorneys' fees, pursuant to at least 35 U.S.C. § 285;

d) That DSI be ordered to pay all attorneys' fees, expenses, and costs associated with this action pursuant to 35 U.S.C. § 285 or other applicable provisions; and

e) Awarding such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff respectfully demands a trial by jury on all claims and issues so triable.

Dated: May 16, 2025

    */s/ Kenneth L. Dorsney*
Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
**MORRIS JAMES LLP**
500 Delaware Avenue, Suite 1500
Phone: (302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

*Of Counsel:*

Ryan Schletzbaum
(*pro hac vice* forthcoming)
Jason Mudd
(*pro hac vice* forthcoming)
Zachary M. Mass
(*pro hac vice* forthcoming)
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108-2613
Phone: (816) 474-6550
Fax: (816) 421-5547
Email: rschletzbaum@shb.com
Email: jmudd@shb.com
Email: zmass@shb.com

*Counsel for Plaintiff Intercom, Inc.*